## ELIAS NEEDHAM *versus* ABNER SANGER.

A mortgagee being desirous of selling the mortgaged land, obtained from the mortgager a quitclaim deed thereof, and the wife of the mortgager released her dower. The mortgagee then executed a contract, by which he agreed that if he should realize from a sale of the land the sum of $200 more than the amount due to him from the mortgager, he would pay the sum of $100 to the plaintiff for the benefit of the wife and children of the mortgager. In an action by the plaintiff, on this contract, to recover the sum of $100, it was *held*, that the mortgager was not an incompetent witness for the plaintiff, on the ground of interest, although the wife had died before the action was commenced ; and that such contract was founded on a good consideration.

In the same action, it appeared that the land was offered for sale, by the defendant, at auction ; that the mortgagee stated, at the auction, that he should not give a warranty deed of the land, but only a quitclaim; that he should bid upon the property, and, if he bought any of it, should get it on the conditions of sale, as others would; that the land was struck off to the mortgagee, he being the highest bidder ; and that the auctioneer subsequently rendered his account of sales to the mortgagee, who gave him a receipt for the proceeds, amounting to more than the sum of $200, over and above his claim against the mortgager. It was *held*, that this was a *sale* of the land, and therefore that the contingency in the contract, upon which the sum of $100 was to be paid to the plaintiff, had happened ; and that the mortgagee was not to be allowed for any payments made by him after the contract was executed, for the purpose of removing incumbrances on the land arising from claims against the ancestor of the mortgager, although the mortgager had warranted the land to be free from incumbrance.

In the same action it appeared, that after the execution of the contract, an action was commenced by the mortgager, against the mortgagee, for the purpose of effecting a settlement of their mutual accounts, and that the mortgagee, upon a compromise of the action, paid a sum of money to the mortgager ; and it was contended, that the mortgagee was thereby deprived of the fund out of which the claim of the plaintiff was to be paid. It was *held*, that as the plaintiff was not a party to that action, he was not to be prejudiced thereby ; but that evidence of such compromise was admissible, as being in the nature of a confession that there was money due from the mortgagee to the mortgager.

In the same action it was *held*, that no interest accrued on the claim of the mortgagee between the time of the sale and the time when he gave his receipt to the auctioneer for the proceeds.

THIS was assumpsit on a special contract. The declaration also contained the money counts

Needham
*v.*
Sanger.

The report of the auditor to whom the case was referred, set forth, that for several years previous to April 28, 1828, there had been dealings between the defendant and Jacob Douty, in the course of which Douty had purchased goods and borrowed money of the defendant, and the defendant had paid money for his account ; that on January 26, 1826 and September 18, 1826, Douty, by two warranty deeds of those dates respectively, mortgaged to the defendant all his real estate, being all the land of which his father and mother died seised, to secure the payment of $1200 and interest ; that on July 10, 1827, Douty, at the request of the defendant, quitclaimed to him all his title in the mortgaged lands, the consideration set forth in the deed being the sum of $500 paid by the defendant to Douty, but Douty testified that he received no consideration ; that on April 16, 1828, Douty assigned to the defendant certain personal property as a further security ; that on April 26, 1828, the defendant being desirous of selling the real and personal estate above mentioned, agreed with Douty and his wife, that she should convey to him her right of dower in the real estate, for the consideration of the sum of $400 to be paid her by the defendant, and the further consideration of the sum of $100 to be paid for her benefit, upon the condition stated in an agreement in writing hereafter set forth ; that such release of dower was accordingly executed on the same day ; and that on April 28, 1828, the defendant executed and delivered to the plaintiff the following agreement, as part of the consideration of such release :

" It is agreed by Abner Sanger, that as he is about to make sale of the real and personal estate that Jacob Douty has conveyed to him the said Sanger, that if it sells for so much that he shall realize two hundred dollars more than the amount said Sanger has paid said Douty and all charges of interest of money heretofore paid said Douty, then said Sanger agrees to pay to Elias Needham, for the benefit of Eliza Douty, and her children, the sum of one hundred dollars."

This agreement was the subject of the present action, the declaration, in effect, alleging, that the defendant had sold the estate and had realized more than the sum of $200 over and above his claims against Jacob Douty.

The report further set forth, that the defendant employed Asa T. Newhall, an auctioneer and land surveyor, to conduct the sales of the real and personal estate ; that Newhall, acccrdingly, on the 14th and 24th days of May, 1828, sold the whole thereof by auction, except a part of an island in Humphrey's Pond, valued at $50 ; that the defendant was 'present, and when the conditions of sale were made known, stated publicly to the persons present, that he would not give a warranty deed of the real estate, but should quitclaim to purchasers, that his object in selling, was to get what was due to him, and that he should bid upon the property, and if he bought any of it, he should get it on the conditions of sale, as others would ; that the defendant accordingly purchased all or nearly all the real estate and some articles of the personal property ; that the gross proceeds of the sale amounted to the sum of $3143·06, and the net proceeds, after deducting the expenses and the commissions of the auctioneer and of the defendant, to the sum of $3018·40 ; and that on November 11, 1828, Newhall rendered his account of sales to the defendant, and the defendant gave him the following receipt : " Then Asa T. Newhall, Esq. settled and accounted to me for the above account of sales."

The auditor allowed the sum of $2506·68, as paid by the defendant for Jacob Douty, previously to April 28, 1828, interest being included therein from the time of the payments to May 24, 1828, the day on which the sales were completed. In this amount was included the sum of $400, as paid for the release of dower.

It was further proved before the auditor, that after the sales the defendant paid the sum of $270·81, on account of claims against Joseph Douty, the father of Jacob Douty, or against the latter as administrator of his father, &c. ; and the defendant claimed to have this sum added to the amount paid by him before April 28, 1828, because the payment of such claims was necessary in order to extinguish existing liens on the real estate, which he contended he had a right to remove, inasmuch as Jacob Douty had warranted it to be free from all incumbrances. But the auditor rejected this claim, on the ground that payments made after the sales, could not come

within the intention of the parties as indicated by the terms of the written agreement.

It further appeared, that Jacob Douty commenced an action against the defendant, for the purpose of effecting a settlement of their mutual accounts ; that the action was compromised, and receipts in full passed between the parties, the receipt given by the defendant being dated November 13, 1833 ; that the defendant at that time gave his check for the sum of $200, to Jacob Douty, and also a promise in writing to pay a debt of about $50 due from the latter, and agreed to release to him his estate in the island in Humphrey's Pond. The defendant objected to the admission of these facts in evidence, it appearing from the receipt, that such money and written promise passed from the defendant to Jacob Douty as a compromise of the action. But the auditor was of opinion, that such facts were admissible in evidence in the present action.

The defendant offered witnesses to prove, that after the sales, he sold certain parcels of the real estate, which he had bid in at the first auction, and he contended, that these last sales were to be taken as the means of ascertaining the amount actually realized by him from the property. But the auditor was of opinion, that the first sales must be taken as real sales of the property, that the defendant was bound in this action to account for the net proceeds thereof, and that the evidence offered of any subsequent sales was irrelevant.

The defendant contended, that interest on the sums paid by the defendant to Jacob Douty ought to be calculated to November 1828, the time of the final settlement by Newhall of his account of sales. But the auditor was of opinion, that interest ought to be calculated only to May 24, 1828, the day when the sales were completed by Newhall.

The defendant also contended, that no sale of the property had been made by the defendant at the time when the present action was commenced, and therefore that the condition in the written agreement, upon which the money claimed in this action was to become due, had not happened ; and that the undertaking of the defendant in that agreement was wholly without a legal consideration.

Needham
*v.*
Sanger.

The defendant also contended that he was discharged from such agreement, because Jacob Douty, by his action against him and the settlement thereof, took from him the fund, out of which the payment was to be made, if the agreement was to be performed at all. But the auditor reported that he was not discharged thereby.

The defendant further contended, that Jacob Douty, who was produced as a witness by the plaintiff, was not competent, by reason of his interest in the event of the present action, he being entitled by the decease of his wife, before the action was commenced, to claim her portion of the money which might be recovered. But the auditor, being of opinion that the witness had no direct interest in the event of this action, permitted him to testify.

Newhall testified, that he called at the house of Douty and procured the signatures of Douty and his wife to the deed releasing her right of dower ; that the defendant was not present ; that he was not certain whether he took the deed after it was signed, to the defendant, or not, he rather thought he did ; that he was not certain he did not leave it with the parties who signed it. He further testified, that Douty requested him to assist in selling the property ; that at the auction the sum of $1300 was bid for the homestead, and that the defendant having thereupon bid the sum of $1305, it was struck off to him ; that the land would have sold for more, if a warranty had been given ; and that the defendant calculated that after the payment of his own claims, there would be the sum of $700 in his hands, and that if he was obliged to pay $500 to Douty's wife, there would be only $200 left for other creditors.

The defendant was defaulted ; and it was agreed, that the default should stand or a nonsuit be entered, as the Court should determine on the facts.

*Nov. 5th.*   *Choate,* for the defendant, to the point, that Jacob Douty was not a competent witness, the contract of the defendant being a *chose in action* given to the wife which vested in the husband, cited 1 Chitty on Pl. (edit. of 1833) 5, *et seq.* ; *Felton* v. *Dickinson,* 10 Mass. R. 287 ; *Cabot* v. *Haskins,* 3 Pick. 83 ; *Ankerstein* v. *Clarke,* 4 T. R. 616 ; to the point, that the evidence in relation to the compromise between Ja-

cob Douty and the defendant, was incompetent, 2 Stark. on Evid. 38 ; *Hartford Bridge Company* v. *Granger*, 4 Connect. R. 148.

*Proctor*, for the plaintiff, to the point, that the defendant was not at liberty to say, that the property was not sold at the auction, cited *Hayward* v. *Ellis*, 13 Pick. 272 ; and to the point, that a joint interest in the contract of the defendant vested in the wife and children of Jacob Douty, which survived to the children, and therefore that the husband was not incompetent, 2 Dane's Abr. 226 ; 2 Bl. Comm. 183, 399, cites Litt. § 282 ; 1 Chitty on Pl. 4, and cases cited.

PUTNAM J. delivered the opinion of the Court. This is assumpsit upon a special contract, accompanied with the money counts. The case was referred to an auditor, who has examined the evidence and reported the facts with great labor and distinctness. The facts are somewhat complicated, but may be briefly stated. From the report of the auditor it appears, that the defendant, in January 1828, held two mortgages against one Jacob Douty, and had also a claim for divers sums of money *before* that time paid to him and for his account. At the defendant's request, Douty had also executed a quitclaim to the defendant, of the mortgaged premises ; and the wife of Douty had released her right to dower. The arrangement was made for the purpose of enabling the defendant to sell the premises, and from the proceeds to pay his claims against Douty, and account for the surplus. It was agreed that the defendant should pay $500 for the release of the dower. Douty was broken down by intemperance, and made little or no provision for his wife and children. It was agreed that the sum of $100, (part of the $500,) should be paid to the plaintiff for the use of the wife and children, if the defendant should realize $200 over and above the amount of the claims which he then had against Douty. Thereupon the special agreement was made.

The object of this action is to enable the plaintiff to recover the $100, for the use of the children of Douty, his wife having deceased before this action was commenced.

The plaintiff declares, in effect, that the defendant has sold the estate according to the agreement between the parties in

Needham
*v.*
Sanger.

*Dec. 11th*

interest, and has realized more than $200 over and above the claims which the defendant had against Douty, the husband ; so that the defendant now should pay the $100 to the plaintiff in trust for the children. And to maintain his action the plaintiff has offered the husband as a witness. He was admitted by the auditor, notwithstanding the objections of the defendant.

It will be convenient in the first place to determine whether Douty was a competent witness. It is contended for the defendant, that Douty is directly interested in the event of this suit ; that the contract of the defendant to pay money to the plaintiff for the use of the wife and children, so far as the wife was concerned, was just as if it had been for the use of the husband ; that it was a chose in action, which vested in the husband, just as a promissory note made to the wife during the coverture would have vested in him ; that it is like the case where A gives money to B, for the use of C, in which case C may bring the action for the money in his own name, according to well settled principles of the law.

But we all think, that this was a post-nuptial contract, upon valuable consideration, as fully appears hereafter, intended for the benefit of the wife and her children, the legal title to which vested in the plaintiff. They had a joint interest in the contract, which survives to the survivors. The wife having deceased, the children are entitled ; and if one child should decease, the surviving children would be entitled. So that Jacob Douty, the husband, could not by law have maintained an action upon the contract touching the $100, against his agreement, that it should be paid to the plaintiff, as before stated. We all think that he was a competent witness for the plaintiff, in this action.

The claim of the plaintiff has however been met with various objections on the part of the defendant, which will now be considered.

It has been contended for the defendant, that the contingency upon which the payment depended has not happened : that the defendant has not sold the land ; but that the title remains in him just as it did before and at the time when the agreement was made.

The obvious intent of the parties was to ascertain the cash value of the property as it was then held by the defendant And for that purpose it was offered at a public auction, to be sold to the highest bidder. The defendant employed Asa T. Newhall to assist in making the sale, measuring the land, setting off the lots, &c. ; and Jacob Douty likewise requested Newhall's services on that occasion. He undertook, upon their request, to superintend the sales, which were made on the 14th and 24th of May, 1828.

The defendant attended and observed to the company, tna the object of selling the property was for him to get his pay , that whoever purchased the property, he should quitclaim his right to him ; that he should not warrant the property ; *that he should bid upon the property*, and if he bought any of it, he should get it as others would, upon the conditions of the sale. The whole of the estate (except half of the island, of the value of only $50) was put up at the auction, and the homestead and the greatest part of the real estate were struck off to Sanger, the defendant. And on the 11th of November, Newhall accounted with Sanger for the proceeds of the sales ; and he then gave the following receipt. " November 11, 1828. Then Asa T. Newhall Esq. settled and accounted to me for the above account of sales. Abner Sanger."

These facts are, as we think, a perfect answer to the suggestion, that the property has not been sold within the meaning of the agreement upon which this action was brought. In common parlance it has been sold, and the defendant, according to the testimony of Newhall, and the report of the auditor, received $3143·06 for the gross proceeds of the property. The net proceeds, after the allowance of the auctioneer's and defendant's expenses and commissions, amount to $3018·40. The auditor has allowed the sum of $2506·68, for the claims of Sanger against Douty, existing on April 28, 1828 ; leaving a balance in his hands of $511·72. He has realized (to use the words of the agreement) over two hundred dollars more than the amount he had paid Douty, and all charges of interest of money theretofore paid Douty.

But it is contended for the defendant, that this has not been realized in cash ; that he holds the estate just as he did before.

We all think there is no weight in this argument. If Sanger had not bid the sum of five dollars more than the bidder next before, upon the homestead, that part of the property would have been paid in cash. And the same remark applies in regard to every part of the real estate that Sanger bought. If he had permitted the property to be struck off to the persons bidding next before him, cash would have been paid greatly exceeding the amount of $200 over his claims against Douty. But it is not, we think, for the defendant to raise this argument ; for he attended the auction as a bidder, and preferred to hold the land, and other property which he bought, at the prices for which the same were struck off to him, rather than the cash. He accounted with Newhall for the proceeds of the auction sales, as cash.

But it has been contended, that there were incumbrances upon the real estate, for claims due from Joseph Douty (the father of Jacob Douty) for which the defendant should be allowed, amounting to the sum of $270·81.

There are two answers : 1. Those claims were paid by Sanger after April 28, 1828 ; and 2. He offered only what right he had to the estate, at the auction, and would not give a warranty. It is perfectly clear, that strangers purchasing would have been entitled only to a deed of release and quitclaim from Sanger, which would not have covered the claims now under consideration ; and Sanger avowed at the auction, that he should bid upon the same terms as other persons should bid.

It has been contended that Jacob Douty has recovered the sum of $350 from the defendant, which was the fund out of which this sum now claimed by the plaintiff, should have been paid. But we think it is a sufficient answer, that the plaintiff was not a party to that suit or matter, and is not thereby to be prejudiced. The transaction was after the agreement upon which the plaintiff declares ; and the rights of the plaintiff had vested. And we think that the compromise between Jacob Douty and Sanger, of the matters between them growing out of the accounts relating to this estate, was competent evidence, in the nature of a confession, that there was money due from Sanger to Douty, notwithstanding the plaintiff was not a party to that controversy.

It was contended, that interest should have been allowed    Needham
from May, when the sales were made, to November, when            v.
Sanger received the proceeds from Newhall.    But we think     Sanger.
that the land was received in May as cash, and so this claim of
the defendant was rightfully disallowed by the auditor.    There
was no necessity for the defendant to make deeds to third
persons and take the estate back, which he put up at the auc-
tion, because the title was already in him.    And this proceed-
ing being with the full knowledge and consent of Jacob
Douty, would preclude him from making any further demand
upon Sanger touching the premises.    It would be regarded as
an equitable performance of the trust to account for the prop-
erty which Jacob Douty had conveyed to him, according to
their agreement.

But it has been contended, that there was no considera-
tion for the defendant's promise, or that it was made upon a
past consideration.

The promise was made on the 28th, and the release of the
dower of Mrs. Douty was dated on the 26th of the same
month.    So it is argued, that the consideration arising out of
that release of dower was past, and would not support the
promise set forth in the declaration, as made on the 28th of
April.    Now it appears from the evidence of A. T. Newhall,
that it was not delivered at the time it was executed ; but the
presumption is, from the facts which were proved, that it was
delivered at the time when the agreement was made    So the
promise was not made upon a past consideration.

But it was upon a valuable consideration.    It was for the
release of the right of dower to the defendant.    And there
was a good consideration moving from the wife, for the hus-
band to appropriate the money according to the agreement.
It was a transaction which would have been held valid even
against the creditors of the husband.    For there is no intima-
tion of fraud on his part.    It would fall within the case of
*Bullard* v. *Briggs*, 7 Pick. 533 ; where the husband, in
consideration of his wife having released her right of dower in
an estate which the husband had mortgaged, conveyed the
right. in equity to a stranger for the use of the wife.    The

43 *

rights of creditors are not involved in this discussion ; nor is the defendant acting or defending on their account.

We might perhaps have waived a great part of the examination, by resting the opinion as to the amount realized by the defendant, upon his own acknowledgment with a full knowledge of all the facts. But we have preferred the course we have taken ; and we are all of opinion that the plaintiff has fully supported his action. According to the agreement of the parties, the defendant is to be defaulted and judgment is to be rendered for the plaintiff accordingly.